IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | CRIMINAL NO. 2:20-cr-200-RBS |
| TEVA PHARMACEUTICALS USA, : INC. | |
| and GLENMARK : PHARMACEUTICALS INC., USA | |

**UNITED STATES' OPPOSITION TO
DEFENDANT TEVA PHARMACEUTICALS USA, INC.'S
MOTION FOR DISCLOSURE OF EVIDENCE PRESENTED TO
THE GRAND JURY AS TO "OTHER GENERIC DRUGS"**

The United States opposes defendant Teva Pharmaceuticals USA, Inc.'s motion for disclosure of grand jury materials, which—like the pending motion filed by defendant Glenmark Pharmaceuticals, Inc. USA (Dkt. 148)—is precisely the type of fishing expedition that grand jury secrecy rules prohibit. Teva has no particularized need for access to the grand jury materials, and the bases it provides in attempting to meet this standard do not outweigh the public's interest in maintaining secrecy. Further, the ends of justice do not favor disclosure of the materials. Teva's alternative requested relief—*in camera* review of grand jury materials—is unnecessary. Accordingly, the Court should deny Teva's motion without a hearing.

**PROCEDURAL BACKGROUND**

The Second Superseding Indictment ("Indictment") charges Teva Pharmaceuticals USA, Inc. ("Teva") with entering into three separate conspiracies to restrain trade within the generic pharmaceutical industry in violation of the Sherman Act, 15 U.S.C. § 1. Dkt. 28. Although these three conspiracies share a transactional nexus and bear a logical relationship to one another, they are factually and legally distinct.

Count I of the Indictment charges Teva and defendant Glenmark Pharmaceuticals, Inc. USA

1

("Glenmark") and other named and unnamed co-conspirators with conspiring to "increase and maintain prices of pravastatin and other generic drugs sold in the United States." *Id*. at 5. In a letter sent to counsel on April 27, 2021, the United States informed Teva that the "other generic drugs" about which the government may introduce evidence include, but are not limited to, adapalene gel, fluconazole, levocetirizine, moexipril, nabumetone, ondansetron, and ranitidine.

Count II charges Teva with conspiring with named and unnamed co-conspirators to "allocate customers and rig bids for, and to stabilize, maintain, and fix prices" of the following generic drugs, "among others:" carbamazepine tabs and chews; clotrimazole topical solution 1%; etodolac IR and ER tablets; fluocinonide cream, emollient cream, gel, and ointment; and warfarin. *Id*. at 11. In its April 27 letter, the United States identified adapalene gel, enalapril, ketoconazole cream, and notriptyline about which the government may introduce evidence related to Count II.

Count III charges Teva with conspiring with named and unnamed co-conspirators to "allocate customers and rig bids for, and to stabilize, maintain, and fix prices" of the following generic drugs, "among others:" etodolac IR, nadolol, temozolomide, and tobramycin. *Id*. at 15–16. In its April 27 letter, the United States identified amiloride, bumetanide, clemastine, dicloxacillin, fluocinonide, hydralazine, ketoconazole cream, labetalol, nabumetone, and triazolam about which the government may introduce evidence related to Count III.

As explained more fully in its opposition to Glenmark's nearly identical motion, Dkt. 149, the United States has produced discovery and voluntarily provided additional information on all of the drugs subject to the charged conspiracies—which of course have remained unchanged since the Indictment was returned in August 2020—including the drugs specifically identified by the government in its April 27, 2021 letter.

In denying Glenmark's motion for severance and misjoinder, the Court found that the United States had not constructively amended the Indictment by proffering that it anticipated introducing

evidence of "other drugs" beyond pravastatin that were subject to the charged conspiracy. Dkt. 146 at n.1. The Court found that "the fact that the Government now intends to bring evidence of other generic drugs involved in Glenmark's portion of the conspiracy is in line with the indictment" and that "regardless of the additional drugs that the Government intends to introduce evidence about at trial, this does not change the actual offense charged in the indictment." *Id.*

## ARGUMENT

Teva's request is, like Glenmark's, unwarranted. Like Glenmark, Teva impermissibly seeks "the specific portions of any testimony or exhibit" presented to the grand jury relating to any conspiratorial products other than those specifically named in the Indictment. Dkt. 153 at 20. Granting that request would eviscerate the strong presumption that grand jury proceedings are conducted in secret. *See Giles v. California*, 554 U.S. 353, 371 (2008); *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991) (explaining that Federal Rule of Criminal Procedure 6(e) codifies the "strict secrecy requirements" of grand jury proceedings). Rule 6(e) applies to "anything which may reveal what occurred before the grand jury," naturally including the presentation of any testimony or exhibits, *United States v. Smith*, 123 F.3d 140, 148 (3d Cir. 1997) (internal quotes omitted), and narrowly cabins circumstances in which a court may authorize disclosure. *See* Fed. R. Crim. P. 6(e)(3)(E).

I. **Rule 6(e)(3)(E)(ii) does not authorize disclosure here.**

Teva's motion provides insufficient grounds to justify piercing grand jury secrecy. Teva seeks to rely on Rule 6(e)(3)(E)(ii), which provides that disclosure of grand jury materials may occur "at the request of a defendant who shows that a ground may exist to dismiss the indictment because of a matter that occurred before the grand jury," Rule 6(e)(3)(E)(ii). Subsection (ii) requires a movant to provide "particularized and factually based grounds" for the Court to conclude "irregularities in the grand jury proceedings may create a basis for dismissal of the indictment," and

3

that disclosure is "needed for the ends of justice" when balanced against the public's interest in maintaining grand jury secrecy. *United States v. Chalker*, No. CRIM.A. 12-0367, 2013 WL 4547754, at *4 (E.D. Pa. Aug. 27, 2013) (Surrick, J.), at *4.

Teva offers two "particularized and factually based grounds" justifying disclosure, neither of which provide sufficient basis for piercing grand jury secrecy: first, that the Indictment does not allege a "relevant market" for the conspiracies; and, second, that the United States "intends to try Teva for crimes that … [were] never actually presented to the Grand Jury." Dkt. 153 at 3.

### A. No ground for dismissal of the Indictment based on "relevant markets" exists.

An indictment charging a per se Sherman Act crime does not need to allege a relevant market, and the United States does not need to prove one at trial. Because failure to allege a relevant market is not grounds for dismissal, Teva's first proffered basis for disclosure—that the grand jury materials will allow it to determine whether a motion to dismiss the Indictment "for failing to allege sufficiently the market or markets that were supposedly the subject of a wrongful agreement"—fails.[1]

As the Supreme Court recently observed, there is no need "to precisely define the relevant market to conclude these agreements were anticompetitive" because per se violations necessarily "involve agreements between competitors not to compete in some way." *Ohio v. Am. Express Co.*, 138 S. Ct. 2274, 2285 n.7 (2018) (citing *FTC v. Ind. Fed. Dentists*, 476 U.S. 447, 460–61 (1986); *Catalano, Inc. v. Target Sales, Inc.*, 446 U.S. 643, 648–49 (1980) (per

---

[1] Even if any definition of relevant markets were required in the context of a criminal per se antitrust case, the Indictment meets that standard. For each of the three conspiracies, the Indictment states that Teva "entered into and engaged in a conspiracy to suppress and eliminate competition" with its co-conspirators. Dkt. 28 at 5 (Count I), 10 (Count II), 14 (Count III). As alleged in the Indictment, Teva's co-conspirators included individuals and corporations that manufactured, marketed, and/or sold generic drugs in the United States. *Id.*

4

curiam)).[2] The indictment need only allege that the conspirators were actual or potential horizontal competitors[3] at the time they engaged in the charged conspiracy. As the Third Circuit explicitly stated in *United States v. Sargent Electric Co.*, 785 F.2d 1123, 1127 (3d Cir. 1986), a "horizontal agreement tends to define the relevant market, for it tends to show that the parties are at least potential competitors. If they were not, there would be no point to such an agreement." And as explained by the Fifth Circuit, "*Sargent*[] stand[s] for the unremarkable proposition that an agreement not to compete between two parties who are not actual or potential competitors is not per se or otherwise illegal because an agreement not to compete between two parties who are not competitors is meaningless." *United States v. MMR Corp.* 907 F.2d 489, 498 (5th Cir 1990).

In fact, *Sargent* is illustrative that the Indictment properly charges Teva with three separate conspiracies. 785 F.2d 1123 (3d Cir. 1986). Like the conspiracies in *Sargent*, there is overlap in the membership of the conspiracies and the relevant product offered (in *Sargent*—electronical construction work; here—generic pharmaceuticals) by the various conspirators. As with the conspiracies in *Sargent*, however, the conspiracies charged here are legally and factually distinct. Each conspiracy represents one core agreement formed between Teva and its co-conspirators. Defining the conspiracies here on a product-by-product basis as suggested in Teva's motion, Dkt. 153 at 11, would be as nonsensical as defining the conspiracies in *Sargent*

---

[2] *See also Smithkline Beecham Corp. v. Eastern Applicators, Inc.*, 2002 WL 1197763 at *2 (E.D. Pa. May 24, 2002) (stating that "where 'per se' analysis is applied to an alleged antitrust violation, the second and third elements [relevant market and anticompetitive effects] are presumed to be satisfied.") (citing *Rossi v. Standard Roofing, Inc.*, 156 F.3d 452, 464 (3d Cir. 1998) (noting that "because per se analysis applies," relevant markets and anticompetitive effects "are conclusively presumed satisfied and need not be addressed.")).

[3] For the purpose of antitrust law, horizontal competitors are participants at the "same level of the market structure," such as two construction companies capable of supplying the same services. *United States v. Topco Assoc., Inc.*, 405 U.S. 596, 608 (1972). Agreements in restraint of trade among horizontal competitors are typically judged by the per se standard, whereas agreements among vertical market participants, such as a manufacturer of a product and its distributor, are generally judged by another standard. *Id*.

based on each electronical construction service offered by the various conspirators.

The Indictment provides sufficient detail of the defendants' market positions with one another and their crimes. It clearly charges both defendants with participating in horizontal price fixing—a "classic example of a restraint of trade analyzed under the per se standard." *In re Chocolate Confectionary Antitrust Litigation*, 801 F.3d 383, 395 (3d Cir. 2015). The Indictment identifies the defendants as horizontal competitors in the generic pharmaceutical industry. Dkt. 28 at 4 ("Defendant Teva, defendant Glenmark, Apotex, and others known and unknown to the grand jury were competitors in the marketing and sale of generic drugs, including pravastatin, in the United States"); 9 ("Defendant Teva and Taro U.S.A. were competitors in the marketing and sale of generic drugs in the United States"); and 14 ("Defendant Teva and Sandoz were competitors in the marketing and sale of generic drugs in the United States"). Nowhere in Teva's motion does it claim—nor could it claim—that Teva and its co-conspirators were not potential competitors in the generic pharmaceutical industry. No further market definition is required under *Sargent* or otherwise.

Teva also fails to explain how access to the grand jury materials would assist in its determination of the appropriateness of a motion to dismiss on this basis. To be granted access to grand jury materials under subsection (ii), a movant must demonstrate that the materials could reveal a "fatal defect" in the indictment due to "a matter that occurred before the grand jury." *United States v. Aldea*, 692 Fed. App'x 87, 89 (3d Cir. 2017) (per curiam). But the allegedly fatal defect relied upon in Teva's motion bears no relationship to what occurred before the grand jury. Unlike in *United States v. Islam*, where the charging document clearly indicated the grand jury had been presented with an erroneous interpretation of the law, the Indictment here is facially valid. No. 20-CR-00045, 2021 WL 312681, at *2 (E.D. Pa. Jan. 29, 2021). The law is settled

and the Indictment is clear. Teva's arguments to the contrary are thinly veiled attempts to question the adequacy of the evidence presented to the grand jury. But as the Supreme Court has consistently held, "an indictment valid on its face is not subject to challenge on the ground that the grand jury acted on the basis of inadequate or incompetent evidence." *United States v. Calandra*, 414 U.S. 338 (1974) (citing *United States v. Costello*, 350 U.S. 359 (1956)).

### B. No constructive amendment of the Indictment has occurred or will occur.

Teva's second proposed basis for disclosure—constructive amendment of the indictment—is belied by the Court's prior order denying severance, which observed that the Indictment is valid regardless of evidence provided to the grand jury relating to "other drugs." Dkt. 146, n.1 ("[R]egardless of the additional drugs the United States intends to introduce evidence about at trial, this does not change the actual offense charged in the indictment."). Nor could it, since, as this Court pointed out, constructive amendment occurs only when "the evidence and jury instructions *at trial* modify essential terms of the charged offense…" Dkt. 146, n.1 (citing *United States v. Daraio*, 445 F.3d 253, 259–60 (3d Cir. 2006)).

Nor is a hypothetical concern that the United States may seek to constructively amend the Indictment in the future a "ground [that] may exist to dismiss the indictment because of a matter that occurred before the grand jury." R. 6(e)(3)(E)(ii). And this alleged fear certainly is not a "particularized and factually based ground" for Teva to be granted access to grand jury materials at this time, if ever. *Chalker*, 2013 WL 4547754, at *4; *see also United States v. Aldea*, 692 Fed. App'x at 89 (affirming denial of motion for relief under subsection (ii) because defendant failed to demonstrate how disclosure of grand jury materials could reveal a "fatal defect" in the indictment). Accordingly, this argument provides no basis for piercing grand jury secrecy under subsection (ii).

7

Teva's motion fails to meet the basic requirements of subsection (ii) and should be denied as an unsupported attempt to "engage in a fishing expedition or to satisfy an unsupported hope of revelation of useful information." *United States v. Slade*, CRIM.A. 12-0367, 2013 WL 3344341, at *4 (July 3, 2013) (Surrick, J.) (quoting *United Kingdom v. United States*, 238 F.3d 1312, 1321 (11th Cir. 2001)).

### C. *In camera* review is inappropriate where no particularized need exists.

In the alternative to disclosure, Teva asks that this Court perform an *in camera* review of the grand jury materials. As explained in the United States' response to Glenmark's motion for disclosure, "an *in camera* review of grand jury materials is unnecessary where the movant has failed to establish a particularized need for disclosure." Dkt. 149 at 9 (citing *Chalker*, 2013 WL 4547754, n.9). Like its co-defendant, Teva has failed to establish a particularized need to access the grand jury materials. Therefore, this Court should deny Teva's request for an *in camera* review of the same.

### CONCLUSION

For the foregoing reasons, the United States of America respectfully requests that this Court deny Teva Pharmaceuticals USA, Inc.'s Motion for Disclosure of Evidence Presented to the Grand Jury as to "Other Generic Drugs" without a hearing.

Dated: April 15, 2022

                                               Respectfully submitted,

                                               /s/ Julia M. Maloney
                                               Mark C. Grundvig
                                               Emma M. Burnham
                                               Kevin Hart
                                               Matthew W. Lunder
                                               James A. Ryan
                                               Julia M. Maloney
                                               Jonathan Pomeranz

Attorneys
U.S. Department of Justice
Antitrust Division
450 5th Street NW, 11th Floor
Washington, DC 20530
(202) 305-1878

## CERTIFICATE OF SERVICE

I hereby certify that this pleading was electronically filed, and was thus served on this the 15th day of April, 2022 on defense counsel:

Beth A. Wilkinson (*pro hac vice*)
Brian L. Stekloff
Kosta Stojilkovic
WILKINSON STEKLOFF LLP
2001 M Street NW, 10th Floor
Washington, DC 20036
Telephone: (202) 847-4000
Fax: (202) 847-4005
bwilkinson@wilkinsonstekloff.com

Ann C. Flannery (PA Bar #52553)
Law Offices of Ann C. Flannery, LLC
1835 Market Street, Suite 2700
Philadelphia, PA 19103
215-636-9002
acf@annflannerylaw.com

*Attorneys for Defendant Glenmark Pharmaceuticals Inc., USA*

R. Stephen Stigall, Esquire
David L. Axelrod
James A. Mitchell
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103
stigalls@ballardspahr.com

Mark P. Ressler
KASOWITZ BENSON TORRES LLP
1633 BROADWAY
NEW YORK, NY 10019
212-506-1700
mressler@kasowitz.com

*Attorneys for Teva Pharmaceuticals USA, Inc.*

 /s/ Julia M. Maloney
Julia M. Maloney
Attorney